IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LORI M. ANDERSON,

        Plaintiff,

   v.

SHOE PAVILION CORP.,

        Defendant.
_____

CV 04-1122-HA

OPINION
AND ORDER

Sharon Stevens
Michael D. Callahan
Callahan & Stevens
5845 Shoreview Lane N, Suite 500
P.O. Box 20937
Keizer, Oregon 97307
    Attorneys for plaintiff

David G. Hosenpud
Brady M. Bustany
Lane Powell PC
601 Second Ave., Suite 2100
Portland, Oregon 97204

Douglas J. Farmer
Amy B. Norris
David D. Sohn
Sheppard, Mullin, Richter & Hampton LLP
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff is the former manager of a Shoe Pavilion store located in Salem, Oregon. She filed a Complaint in August 2004, alleging hostile work environment, retaliatory discharge in violation of O.R.S. 659A.030, wrongful discharge, and intentional infliction of emotional distress (IIED). Defendants filed this summary judgment motion (Doc. #19) on April 25, 2005. Oral argument was heard on July 25, 2005. At oral argument, plaintiff agreed to dismiss her IIED claim. Accordingly, defendant's motion is granted as to this claim. For the reasons that follow, the remainder of the motion is denied.

## FACTUAL BACKGROUND

On a motion for summary judgment, the court is required to construe the disputed facts in favor of the non-moving party, in this case, the plaintiff. Fed. R. Civ. P. 56(c); *Thomas v. City of Beaverton*, 379 F.3d 802, 807 (9th Cir. 2004).

According to the Complaint, plaintiff began working for defendant Shoe Pavilion Corp. (Shoe Pavilion or defendant) on September 15, 2001, at its Salem, Oregon store. Complaint (Compl.), ¶ 14. Plaintiff became store manager after six months, and remained in that position until her termination a little over two years later. Deposition of Lori Anderson (Anderson Dep.), 21:11-25. During her tenure, Ron Keller (Keller) was the district manager and plaintiff's direct supervisor. *Id.* at 113:12-22.

At the time of her hire, plaintiff was provided an employee handbook that contained a sexual harassment policy that read, "[a]nyone who believes that they have been or are being harassed, discriminated against, or who witness what they think may be discrimination or harassment, must immediately report this to their manager. If your complaint involves your manager, speak to any officer of the company." Employee Handbook, Ex. D to Declaration of David D. Sohn (Sohn Decl.). However, the policy also provided that anyone who suspects that he or she has been the victim of harassment should report the harassment "to any other member of management." *Id.* The policy further provides that "[y]our report will be investigated by the Human Resources Department," and that it may include interviews of the parties involved and potential witnesses. *Id.* On September 16, 2001, plaintiff signed a form acknowledging that she had received, reviewed, and agreed to follow the policies outlined in the employee handbook. Acknowledgment Form, Ex. F to Sohn Decl.

Part of plaintiff's duties as manager was to train her employees on the company's sexual harassment and discrimination policies; plaintiff confirms that she did so. Anderson Dep., 113:15-314:3. Plaintiff testified that she was aware of Shoe Pavilion's anti-harassment policy, and that she felt comfortable enough with it to be able to answer questions of her employees. *Id.* at 108:1-4; 314:14-18. Plaintiff's store contained an Equal Opportunity Employment poster displayed near the restroom. *Id.* at 108:11-24. Plaintiff testified that she read and was familiar with the anti-harassment policy detailed on that poster. *Id.* at 109:3-9.

Shoe Pavilion also provided plaintiff with a "Loss Prevention Reference Guide" when she was hired. This guide outlined an "Exchange and Refund" policy, which provides in part: "[c]ustomer must complete and sign the Return/Exchange slip." Exchange and Refund Policy, Ex. C to Sohn Decl. This policy was in existence throughout plaintiff's employment. Anderson Dep., 47:14-48:6. Plaintiff trained store employees regarding this policy. *Id.* at 312:16-21. However, plaintiff asserts that Keller's verbal instructions regarding the processing of returns contradicted defendant's written policy. Affidavit of Lori Anderson (Anderson Aff.), ¶¶ 19, 20, 24. For instance, the written policy states that the customer must "complete and sign" the slip, yet Keller told employees that filling in the customer's phone number was "optional." *Id.* at ¶ 20.

Beginning in March 2002, and continuing for the duration of her employment, plaintiff alleges she was subjected to unwanted and unwelcome comments from Keller. It is alleged that Keller repeatedly asked to see plaintiff's breasts; left notes for plaintiff at the store with references to sexual body parts and the sex acts he wanted to perform on those body parts; patted plaintiff on the rear end; brushed up close to plaintiff and pressed his body against hers; and told plaintiff that she could have days off if she would have sex with him in the stock room. Compl., ¶ 16. In October 2002, Keller cornered plaintiff and tried to get under plaintiff's skirt. *Id.* When she attempted to leave, Keller restrained plaintiff and kissed her, making comments such as "I will have you" and "I will never give up." *Id.* In December 2002, Keller told plaintiff that he was "hurt" because he had seen a truck in plaintiff's driveway and suspected that plaintiff was dating someone. *Id.* at ¶ 17. Keller called plaintiff's roommate and questioned her about plaintiff's relationships. When

plaintiff confronted Keller, he asked her if she would desire him if he got a divorce and began living alone. *Id.*

On December 31, 2002, plaintiff alleges she spoke with Kim Rogers (Rogers), the manager at defendant's Beaverton, Oregon store, about Keller's behavior. *Id.* at ¶ 18; Anderson Aff., ¶¶ 12, 13. However, in her complaint filed with the Oregon Bureau of Labor and Industries (BOLI), as well as her subsequent deposition, plaintiff stated that she never reported the harassment to defendant. Investigation of BOLI, Ex. A to Sohn Decl., ¶ 4 ("Complainant concedes that she never reported the harassment to Respondent."); *see also* Anderson Dep., 113:8-11 ("Question: So is it accurate that you did not report the harassment to Shoe Pavilion Corporation during your employment with the company? Answer: That's right.").

Rogers allegedly spoke with Keller, who became angry at plaintiff and told plaintiff she was "out of line" and that he could make it very hard for her at work. Compl., ¶ 18; Anderson Aff., ¶ 13. Keller also allegedly told plaintiff that he had only given plaintiff a pay raise and granted her time off because Keller hoped that he and plaintiff could be together. Plaintiff told Keller that she did not want his favors, that his conduct was sexual harassment, and that she did not like it. *Id.*

From that day forward, plaintiff alleges that Keller treated her more harshly and was more critical of her work. On January 8, 2003, Keller verbally reprimanded plaintiff for offering to give a discount to a customer, John G. Hancock (Hancock), if he paid in cash. *Id.* at ¶ 19. The next day, Hancock reported plaintiff's offer of a discount in a letter to Keller, who allegedly reported this information to corporate headquarters. Anderson

PAGE 5 - OPINION AND ORDER

Aff., ¶ 28; Hancock Letter, Ex. A to Kuhlmann Decl. Plaintiff was placed on leave that day.

Shortly thereafter, Shoe Pavilion conducted an audit of the returns processed at plaintiff's store. Anderson Dep. at 52:11-14; Declaration of Sandra Kuhlmann (Kuhlmann Decl.), ¶¶ 2, 3. The audit involved an analysis of all return receipts processed in plaintiff's store, including those processed by plaintiff. Kuhlmann Decl. at ¶¶ 1, 2, 12; Audit Report, Ex. C to Kuhlmann Decl. According to the auditor, Sandra Kuhlmann, the audit concluded that the return receipts processed by plaintiff contained up to five or six times the number of irregularities as those of other employees audited in the same store. *Id.* at ¶ 11.

On January 14, 2003, while plaintiff was still on suspension, Keller telephoned her at home and asked her if she and her roommate wanted to engage in a "threesome." Compl., ¶ 20. Plaintiff declined Keller's invitation. Keller responded that this "could be her last chance." *Id.* Two days later, on January 16, 2003, plaintiff was called into the store and Keller terminated her employment for not "doing returns according to company policy," and because she was "found to have a number of violations of the company's return policies." Anderson Dep., 51:8-23. Keller also told plaintiff that it was his decision to inform corporate of Hancock's letter. Anderson Aff., 28. When plaintiff attempted to leave the room, Keller grabbed plaintiff, hugged her, and tried to kiss her. Compl.,¶ 21.

Defendant argues that its decision to terminate plaintiff was the result of defendant's Chief Operating Officer Bob Hall's (Hall) review of the audit report, and that he alone made the termination decision. Declaration of Bob Hall (Hall Decl.), ¶¶ 1, 2; Return Receipts, Ex. B to Kuhlmann Decl. Hall notified Keller of the termination decision

and ordered him to communicate it to plaintiff. Defendant contends that Keller did not participate in the termination decision or the audit on which it was based. Kuhlmann Decl., ¶¶ 1, 2, 12; Audit Report, Ex. C to Kuhlmann Decl. At the time of the decision, defendant argues that Hall had no knowledge of plaintiff's alleged opposition to Keller's harassment. Hall Decl., ¶ 3.

On May 15, 2003, plaintiff filed a claim with BOLI. Compl., ¶ 10. Defendant received a copy of plaintiff's complaint shortly thereafter and contends that this was the first time it became aware of plaintiff's complaints. Upon receipt of the BOLI complaint, defendant's Human Resources Manager, Myrtle Dawana (Dawana), began an investigation into plaintiff's allegations. Declaration of Myrtle Dawana (Dawana Decl.), ¶ 4. Dawana contacted plaintiff for an interview, but she declined. Dawana Decl., ¶¶ 3-5. Defendant argues that without plaintiff's participation, it could not complete the investigation. *Id.* at ¶ 6.

Since her termination, Keller has allegedly continued to call plaintiff and invited her to his house, stating that he hoped to have a relationship with plaintiff now that he was no longer her supervisor. Compl., ¶ 22.

Plaintiff brings the following claims: (1) violations under Title VII, 42 U.S.C. § 2000e, *et seq.*, for sexual harassment and a hostile work environment; (2) retaliatory discharge under O.R.S. 659A.030; and (3) wrongful discharge.

//
//
//

## STANDARDS

Summary Judgment

Summary judgment is required when the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citation omitted). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). That burden must be met by a showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has satisfied this burden, Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and identify facts that demonstrate a genuine issue for trial. *Id.* at 323-24.

Title VII and O.R.S. 659A.030

Title VII of the 1964 Civil Rights Act provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of . . . sex[.]" 42 U.S.C. §2000e, *et seq.* Sexual harassment violates Title VII. *See generally, Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64 (1986). A hostile work environment is one form of sexual harassment that is proscribed under Title VII. *Id.*

### Hostile Work Environment

A hostile work environment exists when an employee can show that (1) she was subjected to physical conduct of a sexual nature, (2) that this conduct was unwelcome, and

(3) the conduct was sufficiently severe and pervasive as to alter the terms and conditions of her employment and create an abusive working environment. *Id.* at 65; *see also Little v. Windermere Relocation, Inc.*, 265 F.3d 903, 910 (9th Cir. 2001); *Fiedler v. UAL Corp.*, 218 F.3d 973, 985 (9th Cir. 2000); *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991). The working environment must be both subjectively and objectively hostile. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

It is clear that plaintiff has alleged physical conduct that was so severe and pervasive as to constitute an objectively hostile working environment. It is equally clear that the conduct was of a sexual nature. The parties disagree whether this conduct was unwelcome. However, for purposes of this motion only, the parties appear to agree that plaintiff has presented a *prima facie* case of a hostile work environment claim. However, as discussed below, defendant argues that it is entitled to an affirmative defense.

<u>Retaliation</u>

To establish a *prima facie case* of retaliation under Title VII and O.R.S. 659A.030, a plaintiff must demonstrate that (1) she was engaging in a protected activity, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) (citations omitted); *Williams v. Fed. Express Corp.*, 211 F. Supp. 2d 1257, 1264 (D. Or. 2002). The Oregon Court of Appeals has characterized the causal link as a "substantial factor"

determination. *Seitz v. State ex rel. Albina Human Res. Ctr.*, 788 P.2d 1004, 1010 (Or. App. 1990).

Wrongful Discharge

The elements for a common law wrongful discharge are simple: there must be a discharge, and it must be wrongful. *Moustachetti v. State*, 877 P.2d 66, 69-70 (Or. 1994). Generally, an employer may fire an employee at will at any time and for any reason, unless doing so violates a contractual, statutory, or constitutional right. *Patton v. J.C. Penney Co., Inc.*, 719 P.2d 854, 856 (Or. 1986). One of the main exceptions to this rule is that an employer may not terminate an employee for exercising her private statutory rights related directly to the employee's role as an employee and is of important public interest. *See generally, Brown v. Transcon Lines*, 588 P.2d 1087 (Or. 1978). Resisting sexual harassment is an employee related right that may serve as the basis for a wrongful discharge claim. *See Holien v. Sears, Roebuck & Co.*, 689 P.2d 1292, 1300 (Or. 1984).

**DISCUSSION**

First Claim for Relief: Hostile Work Environment

"An employer is subjected to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) (citing *Burlington Indus. Inc. v. Ellerth*, 24 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998)). There is no dispute that Keller was plaintiff's supervisor.

If no tangible employment action is taken against the employee, which is defined as a "significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities" that resulted from or is otherwise connected to the alleged harassment, *Ellerth*, 524 U.S. at 762 (citation omitted), the employer is entitled to raise an affirmative defense. *Faragher*, 524 U.S. at 806. To assert the affirmative defense, the defendant employer must prove by a preponderance of the evidence that it exercised reasonable care to prevent and promptly correct the alleged harassing behavior, and that the plaintiff employee unreasonably failed to take advantage of any corrective or preventative opportunities provided by the employer. *Ellerth*, 524 U.S. at 765. No affirmative defense is available if the supervisor's harassment culminates in a tangible employment action. *Id.* Evidence that the employer implemented an anti-harassment policy, although not dispositive, is a factor to consider when determining whether the defense is applicable. *Id.* Similarly, evidence that the employee failed to abide by the company's complaint procedure is a factor to consider when determining the applicability of the defense. *Id.*

Defendant first argues that plaintiff's termination did not constitute a tangible employment action because Keller did not participate in plaintiff's termination. Thus, the tangible employment action did not result from the alleged harassment. *See Elvig v. Calvin Presbyterian Church,* 375 F.3d 951, 952 (9th Cir. 2004) (citing *Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 182 (4th Cir.1998) ("Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense. If [the plaintiff's] termination did not result from a refusal to submit to [the defendant's] sexual harassment,

then [the defendant] may advance this defense."); *Newton v. Cadwell Labs.,* 156 F.3d 880, 883-84 (8th Cir.1998) (affirming the district court's finding that the plaintiff's discharge was unrelated to her supervisor's advances and holding that employer was entitled to assert affirmative defense on remand).

According to defendant, Keller did not participate in the decision to terminate plaintiff. He did not participate in the audit that caused her termination. Further, defendant argues that Hall was unaware of plaintiff's alleged opposition to sexual harassment at the time he made the decision to terminate plaintiff's employment. Accordingly, defendant argues that plaintiff's termination was not a tangible employment action and defendant is entitled to the affirmative defenses.

The court disagrees that plaintiff's termination does not, as a matter of law, constitute a tangible employment action. It is not disputed that a termination *per se* is a tangible employment action. The question here is whether plaintiff's termination resulted from the alleged harassment and therefore qualifies as a tangible employment action under *Ellerth/Faragher*. Keller informed plaintiff on the day that she was terminated that it was his decision to refer the letter from Hancock to corporate. A reasonable jury could infer from the surrounding facts that Keller's complaint to corporate precipitated the subsequent audit that allegedly led to the termination, thereby rendering Keller a participant in the firing decision. Thus, a material question of fact remains whether plaintiff's termination was a tangible employment action.

Even if plaintiff's termination was not a tangible employment action under *Ellerth/Faragher*, questions of fact still remain as to whether the affirmative defenses apply.

Defendant argues that it is entitled to the affirmative defenses because it took reasonable steps to prevent the harassment by implementing an anti-harassment policy and conducting an investigation, and that plaintiff unreasonably failed to avail herself of the complaint procedures.

The company policy sets forth sections defining sexual harassment, addressing confidentiality, and prohibiting retaliation. It provides that employees are to "immediately report" discrimination or harassment to their manager, and where the complaint involves the employee's manager, such as the case here, the employee is instructed to "speak to any officer of the company." Defendant's Concise Statement of Material Fact (Def.'s CSF, ¶ 6) (emphasis added). There is no definition of who qualifies as "any officer of the company." The policy also provides that an employee who believes that he or she has been subjected to unlawful harassment is to "report the harassment to the Human Resources Department, to your supervisor, *or to any other member of management.*" Ex. D, Sohn Decl. (emphasis added). Additionally, the policy states that the "investigation *may* include interviews of the parties involved and those named as potential witnesses." *Id.* (emphasis added).

Plaintiff agrees that she received and reviewed the harassment policy and was aware of the complaint procedures contained therein. There is conflicting testimony whether plaintiff complained to defendant about Keller's alleged sexual harassment prior to her termination. In the Complaint and in her affidavit, plaintiff states that she reported the

PAGE 13 - OPINION AND ORDER

harassment to Rogers.  In her complaint filed with BOLI and in her deposition, plaintiff testified that she did not report the harassment to "Respondent" or "Shoe Pavilion Corporation."  Although plaintiff does not clarify the apparent inconsistency, it is plausible that plaintiff interpreted the posed questions as referring to defendant's corporate headquarters.  Regardless, the policy does not contain a definition of "any officer of the company," nor a list of who qualifies as "any officer of the company."  Certainly, Rogers, a store manager, was "any other member of management."     Thus, it could cogently be argued that plaintiff perceived Rogers to be an appropriate person under the policy to whom she could communicate her complaints, and that Rogers' knowledge would be imputed to defendant.  *See Swinton*, 270 F.3d at 804-05 (to impute Title VII liability, the individual must possess either the authority to make decisions regarding the harasser's or harassee's employment, or has a duty to communicate employee complaints).  Although Rogers may not have possessed the authority or discretion to affect Keller's or plaintiff's employment, it could persuasively be argued that she had a duty to act as a conduit to management for employee complaints.

In addition, a reasonable jury could find that defendant unreasonably failed to follow its anti-harassment policy by failing to conduct an investigation.  Defendant makes much about plaintiff's refusal to submit to an interview and argues that, as a result, defendant's investigation was fatally flawed and could not be completed.  However, the policy does not state that, absent an interview with the complainant, the investigation cannot be completed.  Rather, the policy provides that the investigation "may" include

party and witness interviews. Defendant interviewed Keller and there is no suggestion that the investigation could not be concluded absent an interview with plaintiff.

For these reasons, the court denies defendant's motion insofar as it pertains to plaintiff's First Claim for Relief.

<u>Second and Third Claims for Relief: Retaliation under O.R.S. 659A.030 and Wrongful Discharge</u>

O.R.S. 659A.030(1)(f) makes it unlawful for an employer to terminate an employee for opposing an unlawful practice, such as sexual harassment. As noted above, to establish a *prima facie* case of retaliation under this chapter, the plaintiff must show that (1) she was engaging in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) the protected activity was a substantial factor in the employer's decision to implement the adverse employment action. *Pool v. VanRheen*, 297 F.3d 899, 910 (9th Cir. 2002) (applying Oregon law) (citation omitted).

Defendant attacks the third prong of this test and argues that plaintiff has failed to show that there was a causal link between the alleged opposition to Keller's harassment and her termination. For the reasons provided above, the court finds that there is a material issue of fact as to whether plaintiff's alleged opposition to Keller's harassment was an impetus for Keller to report Hancock's letter to corporate, which led to the audit and plaintiff's subsequent termination. A reasonable jury could find that plaintiff's alleged opposition was a "substantial factor" in the motivation to discharge her.

Similarly, because the court cannot find, as a matter of law, that defendant did not discharge plaintiff in retaliation, it also cannot find that, as a matter of law, defendant did not wrongfully discharge plaintiff.

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. #19) is GRANTED in part and DENIED in part. It is GRANTED with respect to plaintiff's Fourth Claim of Relief for Intentional Infliction of Emotional Distress. It is DENIED in all other respects.

IT IS SO ORDERED.

Dated this __26___ day of July, 2005.

                                                      ___/s/ Ancer L. Haggerty___
                                                      ANCER L. HAGGERTY
                                                        United States District Judge